## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

THE PBSJ CORPORATION, a Florida
corporation,                                     CASE NO.: 07-21834 JORDAN/TORRES

      Plaintiff,

vs.

WACHOVIA BANK, NATIONAL
ASSOCIATION, a National Chartered Bank,

      Defendant.
_____/

## <u>RESPONSE TO MOTION TO DISMISS</u>

Plaintiff The PBSJ Corporation ("PBSJ"), by and through undersigned counsel, hereby files its Response to Defendant Wachovia Bank, N.A.'s ("Defendant") Motion to Dismiss and states as follows:

***FACTUAL BACKGROUND***

1.      PBSJ is a long-standing customer of Defendant, and the parties have had a business relationship for many years.

2.      In the course of this relationship, PBSJ has opened no less than five (5) various accounts with Plaintiff.  At the time that each of these accounts was respectively opened, original signatures were required and, thereafter, affixed to the pertinent applications and signature cards. Moreover, presentment of corporate resolutions authorizing the opening of these accounts was as well required in order for said accounts to be legitimately opened.

3.      One of the reasons that Defendant requires original signatures and an authorizing corporate resolution in the opening of such corporate accounts is to detect, identify and otherwise prevent fraudulent activity-thus protecting itself and its customer.

4.     However, in or about March 2004, Defendant jettisoned such reasonable fraud prevention precautions and allowed a rogue PBSJ employee ("DeLoach") to open an account in a variant of PBSJ's name (the "Fraudulent Account").

5.     Contrary to all applicable precautions, rules, regulations, policies and procedures, Defendant allowed DeLoach to open the Fraudulent Account using a rubber signature stamp.  *See* Exhibit "G" to Complaint (upon which the signature of PBSJ's Senior Officer, Richard A. Wickett, is patently and obviously not an original signature but rather one effectuated via a rubber stamp facsimile of same).

6.     Additionally, Defendant permitted DeLoach to open the Fraudulent Account without requiring a corporate resolution from PBSJ authorizing the opening of the Account.

7.     As a result of Defendant's negligence in allowing the Fraudulent Account to be opened in such a manner and in thereafter facilitating transactions from this Account, DeLoach was able to embezzle millions of dollars from PBSJ via the funneling of legitimately owned PBSJ funds through the Fraudulent Account.

8.     Furthermore, at the time of the events in question, DeLoach maintained a personal line of credit with Defendant.  Following the opening of the Fraudulent Account and DeLoach's fraudulent scheme perpetrated thereunder, **Defendant amassed over $1,000,000.00 in payments on the DeLoach Personal Line of Credit through PBSJ funds channeled through the Fraudulent Account.**  As such, Defendant directly benefited from the opening and existence of the Fraudulent Account.

*PROCEDURAL BACKGROUND*

9.      Based on the above set of facts, on or about June 14, 2007 PBSJ filed its Complaint

2

against Defendant in the Circuit Court of the Eleventh Judicial Circuit of Florida, in and for Miami-Dade County, Florida.  The Complaint contains counts for negligence and unjust enrichment.

10.     On or about July 17, 2007 Defendant filed a Notice of Removal in this Court.

11.     Thereafter, on or about July 24, 2007 Defendant served its Motion to Dismiss Plaintiff's Complaint and Memorandum in Support Thereof ("Motion to Dismiss") pursuant to Fed. R. Civ. P. 12(b)(6) and S.D. Fla. L.R. 7.1. Prefaced with a selectively edited, truncated statement of facts, the sole basis for the Motion to Dismiss is PBSJ's alleged failure to state a cause of action for which relief may be granted.

12.     For all the reasons below, the Motion to Dismiss should be denied in its entirety.

***STANDARD FOR DECIDING A MOTION TO DISMISS FOR FAILURE TO STATE A CAUSE OF ACTION***

13.     Courts generally view motions to dismiss for failure to state a cause of action with disfavor and rarely grant such motions.  *See Klaskala v. U.S. Department of Health and Human Servs.*, 889 F.Supp. 480, 483 (S.D. Fla. 1995).  *See also In re American Fabricators, Inc.*, 186 B.R. 526, 528 (Bankr. M.D. Fla. 1995)("Courts generally do not favor dismissal for failure to state a claim for which relief can be granted").

14.     A motion to dismiss for failure to state a cause of action simply tests the sufficiency of a complaint, and does not determine the merits of the case.  *See Gay-Straight Alliance of Okeechobee High School v. School Board of Okeechobee County*, 477 F.Supp.2d 1246, 1249 (S.D. Fla. 2007).

15.     In deciding a motion to dismiss, the Court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept the factual allegations as true; (3) draw all inferences

therefrom in the light most favorable to non-moving party.; and (4) read the allegations to include any theory upon which the plaintiff may recover. *See Munera v. Option One Mortgage Corp.*, 2007 WL 1098467 (S.D. Fla. 2007); *Gay-Straight Alliance*, 477 F.Supp.2d at 1249; *Hanna v. WCI Communities, Inc.*, 348 F.Supp.2d 1322, 1325 (S.D. Fla. 2004); *Desporte-Bryan v. Bank of America*, 147 F.Supp.2d 1356, 1360 (S.D. Fla. 2001). *See also Miccosukee Tribe of Indians of Florida v. United States*, 6 F.Supp.2d 1346, 1348-49 (S.D. Fla. 1998)("In evaluating the sufficiency of the claim [under Fed. R. Civ. P. 12(b)(6)], all facts stated in the complaint are accepted as true…factual issues are to be resolved in favor of the plaintiff…and the prospect of recovery is irrelevant").

16.     A motion to dismiss for failure to state a cause of action should not be granted unless it appears to a certainty that the pleader would not be entitled to any relief under any state of facts which could be proved in support of its claim. *See Banco Continental v. Curtiss National Bank of Miami Springs*, 406 F.2d 510, 514 (5th Cir. 1969)[1]; *Gay-Straight Alliance*, 477 F.Supp.2d at 1249 (a motion to dismiss is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); *Hanna*, 348 F.Supp.2d at 1325.  This directive is especially true where allegations of negligence are involved. *See Banco Continental*, 406 F.2d at 514.

17.     As such, the threshold for a complaint to survive a motion to dismiss for failure to state a cause of action is "exceedingly low". *See Hanna*, 348 F.Supp.2d at 1325; *Desporte-Bryan*, 147 F.Supp.2d at 1360 ("A very low sufficiency threshold is necessary for a complaint, or counterclaim, to survive a motion to dismiss").

---

[1] In *Bonner v. Prichard*, 661 F. 2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

18.     In evaluating the instant Motion to Dismiss under the above standards, and as explained in detail below, the Motion should be denied.

### THE ALLEGATIONS OF THE COMPLAINT FULLY ESTABLISH THE EXISTENCE OF A LEGAL DUTY IN THE INSTANT CASE

#### Standards for Determining the Existence of a Legal Duty

19.     Under Florida law, a legal duty arises whenever a human endeavor creates a generalized and foreseeable risk of harming others.  *See McCain v. Florida Power Corp.*, 593 So.2d 500, 503 (Fla. 1992); *Insua v. JD/BBJ, LLC*, 913 So.2d 1262, 1263 (Fla. 4th DCA 2005)(stating same rule); *Michael & Philip, Inc. v. Sierra*, 776 So.2d 294, 296 (Fla. 4th DCA 2000).  *See also Sherwood v. Quietwater Entertainment, Inc.*, 911 So.2d 877, 879 (Fla. 1st DCA 2005)("…a legal duty is created when a defendant's conduct creates a foreseeable zone of risk of harm to others"), citing to *McCain*, 593 So.2d at 503.

20.     As such, the concept of duty has two parts: (1) a relationship that justifies placing a requirement of care upon a defendant; and (2) the general standard of care that defines the risks to be foreseen by a defendant and the level of care to be imposed upon the defendant.  *See Monroe v. Sarasota County School Bd.*, 746 So.2d 530, 534, n.6 (Fla. 2d DCA 1999).

21.     One of the ways in which a legal duty can arise is from the general facts of the case.  *See McCain*, 593 So.2d at 503 n.2, citing to Restatement (Second) of Torts §285 (1965); *Insua*, 913 So.2d at 1263.  *See generally Jacksonville Journal Co. v. Gilreath*, 104 So.2d 865, 867 (Fla. 1st DCA 1958)("Negligence is a relative term and its existence must depend in each case upon the particular circumstances which surround the parties at the time and place of the events upon which the controversy is based").  A legal duty arises from the facts of a case due to a foreseeable zone of risk

ensuing from the defendant's acts.  *See McCain*, 593 So.2d at 503 n.2.

22.    The existence of a legal duty means that the defendant stands in a relation to the plaintiff so as to create a legally recognized obligation of conduct for the plaintiff's benefit.  *See Biglen v. Florida Power & Light Co.*, 910 So.2d 405, 408 (Fla. 4th DCA 2005), citing to Prosser and Keaton on the Law of Torts, §42 at 274 (5th ed. 1984); *Palm Beach-Broward Medical Imaging Ctr., Inc. v. Continental Grain Co.*, 715 So.2d 343, 344 (Fla. 4th DCA 1998 )(stating same rule).

23.    More succinctly, the core of the duty element of a negligence cause of action is the requirement of reasonable, general foresight.  *See McCain*, 593 So.2d at 503.

***Defendant Owed a Duty to PBSJ***

24.    Under Florida's codification of the Uniform Commercial Code, "customer" is broadly defined as "<u>a person having an account with a bank</u> or for whom a bank has agreed to collect items, including a bank that maintains an account at another bank".    Fla. Stat. §674.104(1)(e)(emphasis added).  Courts throughout the country have embraced the same definition of "customer" in this context.  *See*, *e.g.*, *Williams v. Metropolitan Life Ins. Co.*, 367 F.Supp.2d 844, 848 (M.D.N.C. 2005)(stating same definition of "customer" under North Carolina's version of the Uniform Commercial Code); *Parrett v. Platte Valley State Bank & Trust Co.*, 459 N.W.2d 371, 372 (Neb. 1990)(defining customer in relevant part as "any person having an account with a bank" under Nebraska's version of the Uniform Commercial Code); *Campbell v. Citibank, N.A.*, 755 N.Y.S.2d 367, 369-70 (Sup. Ct. App. Div. 2003)(stating same definition of "customer" as above).

25.    Florida's definition of "customer" is controlling in this Court's resolution of the Motion to Dismiss.  *See Conoco, Inc. v. Federal Energy Regulatory Comm'n*, 622 F.2d 796, 800 (5th Cir. 1980)(the general rule is that a definition provided by the legislature is controlling).

26.     PBSJ had no less than five (5) accounts with Defendant. *See* Complaint at ¶¶19-23. There is no question, therefore, that under Fla. Stat. §674.104(1)(e) PBSJ was Defendant's customer under the well-pled allegations of the Complaint.

27.     Based on the generally pled facts of the case and the parties' relationship, Defendant owed a duty to PBSJ because : (1) PBSJ and Defendant engaged in a business relationship for a long course of years (independent of the Fraudulent Account); (2) PBSJ maintained large deposit accounts with Defendant; (3) PBSJ resided a great deal of confidence in Defendant's ability to reasonably open, manage, monitor and handle its accounts; and (4) following enactment of the Patriot Act in 2003, Defendant was under a heightened regulatory obligation to obtain and verify information which identified each person opening an account. *See* Complaint at  ¶¶ 6, 7, 9, 12.

28.     As a matter of reasonable, general foresight, Defendant's acts created a foreseeable risk of harm to PBSJ by virtue of Defendant's: (1) disregarding its own internal policies, precautions and procedures in the opening and subsequent monitoring of the Fraudulent Account; (2) ignoring banking industry standards in the opening of the Fraudulent Account; and (3) ignoring recently-enacted federal mandates in the opening of the Fraudulent Account.

29.     In light of the above, it is readily apparent that Defendant owed a duty to PBSJ.

***Defendant's Arguments Regarding the Existence of a Legal Duty in the Instant Case are Overly Simplistic and, In Actuality, Buttress PBSJ's Position***

30.     Defendant prefers to ignore the parties' long-standing relationship and myopically notes that "absent a customer relationship, there can be no duty between a bank and a non-customer" – a proposition whose applicability is utterly at odds with the well-pled allegations of the Complaint. *See* Motion to Dismiss at 2-4.  In doing so, Defendant concludes all too easily that the general rule

7

whereby a bank does not owe a duty to a non-customer regarding the opening and maintenance of an account applies to the PBSJ-Defendant relationship.  For purposes of establishing the duty element of its negligence cause of action, PBSJ cannot be held to be a non-customer of the Defendant bank.

31.     Most tellingly, upon closer analysis the cases cited in Defendant's Motion to Dismiss fully support PBSJ's position and present absolutely no basis for dismissal.

32.     As such, Defendant's application of the case law on this issue is flawed.  Typically, the non-customers discussed in Defendant's cases were all total strangers to the bank at issue, having had no business or customer relationship with the respective bank prior to the time of the complained of wrong.  *See*, *e.g.*, *Volpe v. Fleet Nat'l Bank*, 710 A.2d 661, 664 (R.I. 1998)(plaintiff was not a Fleet customer nor an individual possessing any other kind of relationship with the bank); *Weil v. First Nat'l Bank of Castle Rock*, 983 P.2d 812, 813 (Colo. Ct. App. 1999)("Plaintiff had no business or personal relationship with First National, other than having had a 1991 request for a business line of credit denied")(emphasis added); *Software Design and Application, Ltd. v. Hoefer & Arnett, Inc.*, 56 Cal.Rptr.2d 756, 758 (Cal. Ct. App. 1996)(plaintiffs were "strangers to, not customers of" the defendant banks and had no relationships with them)(emphasis added); *Miller-Rogaska, Inc. v. Bank One, Texas, N.A.*, 931 S.W.2d 655, 664 (Tex. Ct. App. 1996)("[Plaintiff] Miller was not a customer of either bank, nor did it have a relationship with either bank"); *McCallum v. Rizzo*, 1995 WL 1146812, *1, 2 (Mass. Superior Ct. 1995)("At no time has McCallum been a customer or depositor of Andover Bank…To the contrary, the [bank's] duty is owed exclusively to the customer, not to the persons with whom the customer has dealings")(emphasis added); *Portage Aluminum Co. v. Kentwood Nat'l Bank*, 307 N.W.2d 761, 763-64, 765 (Mich. Ct. App. 1981)("In this case, there was no relationship whatsoever between the plaintiffs and defendant

<u>bank</u>.  Defendant bank did not even know the identity of the plaintiffs…we are unable to find any evidence of a relationship, agreement, undertaking, or contract on which we can impose a general duty running from defendant bank to plaintiffs"); *Pennsylvania Nat'l Turf Club, Inc. v. Bank of West Jersey*, 385 A.2d 932, 936 (N.J. Super. Ct. App. Div. 1978)("In the absence of evidence of any agreement, undertaking or contract between plaintiff and defendant from which any special duty can be derived…Plaintiff cannot recoup by attempting to shift responsibility to the bank which had no relationship with it"); *Gesell v. First Nat'l City Bank of New York*, 24 A.D.2d 424, 425 (N.Y. App. Div. 1965)("These plaintiffs were not general depositors…nor special depositors…<u>Nothing is alleged which establishes a relationship</u> limiting the duty to one merely of care, for the breach of which defendant would be liable to these plaintiffs in negligence")(emphasis added).  The cases cited above by Defendant are clearly inapposite to the facts as pled in the instant case.

33.     Similarly, Defendant's reliance on the case of *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220 (4th Cir. 2002) is grossly misplaced.

34.     In *Eisenberg*, the Plaintiff (Eisenberg) was the victim of a fraudulent investment scheme perpetrated by a Wachovia customer (Reid).  Specifically, Eisenberg transferred his funds into Reid's account at Wachovia but, instead of being invested as Eisenberg believed the funds would be, Reid withdrew Eisenberg's funds and converted them to his own use.  Thereafter, Eisenberg sued Wachovia under two counts of negligence, claiming in each count that "<u>Wachovia breached a duty of care owed to people</u> like Eisenberg, <u>who transact with Wachovia customers</u>, to detect and prevent the fraudulent use of its bank accounts".  *Id.* at 222 (emphasis added).

35.     Not only is *Eisenberg* inapposite to the facts of the instant case[2], but the legal principles discussed therein wholly support PBSJ's position.

36.     For instance, the court stated that:

> **Whether Wachovia owes a duty of care to Eisenberg depends on the relationship between them**…Eisenberg had no direct relationship with Wachovia. He was not a Wachovia bank customer <u>and</u>, so far as the allegations indicate, <u>has never conducted business with Wachovia.</u>

*Id.* at 225 (emphasis added).

37.     The court goes on to note that:

> Eisenberg was neither a Wachovia customer nor the person in whose name [bank customer] Reid's fraudulent bank account was opened…<u>Eisenberg instead falls into the undefined and unlimited category of strangers who might interact with Wachovia's bank customer.</u>

*Id.* at 227 (emphasis added).

38.     As alleged in the Complaint and in utter contrast to the factual backgrounds of Defendant's cited cases, there is no question that in the instant case: (1) PBSJ was indeed a Wachovia customer; (2) PBSJ had a direct, substantial and long-running relationship with Wachovia; and (3) the Fraudulent Account was opened in PBSJ's name (or a variant thereof).  *See* Complaint at ¶26; Exhibit "G" to Complaint.

39.     As such, Defendant's unmeticulous citation to Eisenberg and the other above cases provides no cognizable support for its Motion to Dismiss.

## *PBSJ'S NELIGENCE COUNT IS NOT BARRED BY THE ECONOMIC LOSS RULE*

40.     PBSJ's Complaint does not contain a count for breach of contract. Nevertheless,

---

[2] The specific issue in *Eisenberg* was "whether a bank owes a duty of care to a noncustomer who is defrauded by the bank's customer through use of its services".  *Id.* at 225.

Defendant has moved to dismiss PBSJ's negligence count on the basis of the economic loss rule. Defendant's argument is unconvincing.

41.     At the outset, application of the economic loss rule should be restricted to product liability cases (where the rule was developed to protect manufacturers from liability for economic damages caused by a defective product beyond the damages provided for under warranty law).  *See Indemnity Ins. Co. of North America v. American Aviation, Inc.*, 891 So.2d 532, 538, 542 (Fla. 2004):

> Today, we again emphasize that by recognizing that the economic loss rule may have some genuine, but limited, value in our damages law, we never intended to bar well-established common law causes of action, such as those for neglect in providing professional services.  Rather, the rule was primarily intended to limit action in the product liability context,  and its application should generally be limited to those contexts or situations where the policy considerations are substantially identical to those underlying the product liability-type analysis (emphasis added).

*Moransais v. Heathman*, 744 So.2d 973, 984 (Fla. 1999)(Wells, J., concurring)("…it is my view that the economic loss rule should be limited to cases involving a product which damages itself by reason of a defect in the product").  *See generally Medalie v. FSC Securities Corp.*, 87 F.Supp.2d 1295, 1304 n.6 (S.D. Fla. 2000)("…it appears that the thrust of the Supreme Court of Florida's decision in *Moransais* is to narrow the types of situations in which the economic loss rule applies"); *Greenacre Properties, Inc. v. Rao*, 933 So.2d 19, 25 (Fla. 2d DCA 2006)("…we hesitate to further muddy the waters of the dreaded economic loss rule by addressing its application to this [homeowner's association dispute] case").

42.     Because the instant case is not a product liability matter, and because the policy considerations underlying the instant case are not substantially similar to those underlying the product liability-type analysis, the economic loss rule is inapplicable.

43.     Additionally, even if a breach of contract action theoretically exists or could be brought in connection with the unauthorized Fraudulent Account, the economic loss rule has not eliminated causes of action based on torts that are independent of the contractual breach.  *See Pinellas Suncoast Transit Authority v. Mincom, Inc.*, 2007 WL 1222595, \*5 (M.D. Fla. 2007); *Law Offices of David J. Stern, P.A. v. Scor Reinsurance Corp.*, 354 F.Supp.2d 1338, 1346 (S.D. Fla. 2005), citing to *Moransais*, 744 So.2d at 981.

44.      As such, torts committed independently of a breach of contract and which require proof of facts separate from a breach of contract action are not barred under the economic loss rule. *See Carran v. Morgan*, 2007 WL 628129, \*5 (S.D. Fla. 2007).  *See also Mincom*, 2007 WL 1222595 at \*6 (where a contract exists, a tort action for negligence will lie for acts considered to be independent from acts that breached the contract); *Scor Reinsurance Corp.*, 354 F.Supp.2d at 1346. *See*, *e.g.*, *Donnelly v. Circuit City Stores, Inc.*, 2007 WL 896337, \*3 (M.D. Fla. 2007)(in which the allegations of negligence were found to be separate and distinct from allegations of breach of contract such that the economic loss rule was inapplicable).

45.     The Fraudulent Account was an unauthorized account.  PBSJ never agreed to open such an Account.  The Account was opened and thereafter existed only because of Defendant's slipshod procedures.  It therefore follows that the Defendant's opening and maintenance of this, unauthorized and never agreed-to account, an event which eventually resulted in a loss of millions of dollars to PBSJ, cannot be deemed to be anything other than negligence.  Stated differently, irrespective as to any inklings or strained inferences of a contractual relationship that might have existed between the parties with respect to this Account, the above-described actions of Defendant took place outside the parameters of, and above and beyond, any such relationship.  Under this set of

circumstances, PBSJ's primary remedy is necessarily that of a claim for negligence.

46.     Accordingly, Defendant's negligence is independent of any purported breach of contract.  As noted above, the gist of PBSJ's Complaint is that Defendant was negligent in allowing the opening of the Fraudulent Account via a rubber signature stamp and without an authorizing corporate resolution and in thereafter failing to monitor activity on this Account.

47.     But for Defendant's negligence in allowing the opening of the Fraudulent Account, the ensuing breaches of duty in negligence would have never occurred.  These subsequent breaches include, but are not limited to,: (1) failing to deposit checks payable to PBSJ into a properly authorized PBSJ account; (2) improperly permitting the deposit of checks payable to PBSJ into the Fraudulent Account; (3) clearing checks written on the Fraudulent Account that were payable to DeLoach; and, perhaps most egregiously, (4) Defendant's clearing of checks written on the Fraudulent Account that were **payable to itself**, issued in payment of balances due on the DeLoach Personal Line of Credit.  *See* Complaint at ¶52-55.

48.     PBSJ's negligence claim will therefore involve facts separate from any potential breach of contract claim which would otherwise flow from the Defendant's operation of a properly opened, authorized and agreed-to account.  PBSJ intends to prove, *inter alia*, that Defendant: (1) disregarded or otherwise ignored its own internal policies and procedures in the opening and subsequent monitoring of the Fraudulent Account; (2) disregarded or otherwise ignored banking industry standards in the opening of the Fraudulent Account; and (3) disregarded or otherwise ignored recently-enacted federal mandates in the opening of the Fraudulent Account.

49.      Because Defendant's negligence was committed independently of any putative breach of contract, and because establishing Defendant's negligence will require proof of facts

separate from a breach of contract action, PBSJ's negligence claim is not barred under the economic

loss rule.

### DEFENDANT'S ARGUMENTS BASED ON THE UNIFORM COMMERICAL CODE ARE UNPERSUASIVE

50.     In the section on the Uniform Commercial Code in its Motion to Dismiss, Defendant

misinterprets the underlying acts which form the basis of the Complaint.

51.     Defendant's ultimate position is that "any issue regarding the maker's (i.e.

Plaintiff's) <u>alleged unauthorized signature or indorsement</u> should be addressed to the drawee/payor

bank (Drawee Bank), not Wachovia…"  Motion to Dismiss at 8 (emphasis added).

52.     A review of the Complaint reveals however that PBSJ is not claiming unauthorized

signatures or indorsements on checks.

53.     Rather, Defendant's wrongful acts highlighted in the Complaint relate to the

unauthorized and improper opening of the Fraudulent Account and in failing to monitor activity on

this Account thereafter.  But for Defendant's negligence is allowing the opening of the Fraudulent

Account, the ensuing breaches of duty and resulting harms would have never occurred.

54.     Defendant cites four cases in support of its argument that it is not liable for accepting

checks for deposit that contained an unauthorized indorsement or maker's signature.  *See* Motion to

Dismiss at 5-8.  Defendant's cases are either based on an old version of the Uniform Commercial

Code or otherwise bear no factual similarity to the instant case.

55.     The case of *Jett v. Lewis State Bank*, 277 So.2d 37 (Fla. 1st DCA 1973) is

distinguishable on multiple grounds.  Initially, this case was an affirmance of the trial court's entry

of summary judgment on the basis that the plaintiff suffered no damages.  *See id*. at 39 ("In short,

appellant has failed to establish a loss, namely, that the proceeds were diverted from corporate use so as to prevent him from collecting his loan from the corporation")(emphasis added). In contrast, the instant case is procedurally at the motion to dismiss stage, and the existence and extent of PBSJ's damages is not yet at issue.

56. Moreover, the rule asserted by Defendant, that a drawer of a check only has a right of action against the drawee bank, has been restricted solely to conversion actions. *See id*. at 39 ("The theory behind this rule is that, in an action for conversion against a collecting bank, the essential elements of conversion would be lacking in that the drawer does not have the right to immediate possession of the check because the beneficial ownership of the check is in the payee, not in the drawer")(emphasis added). In the instant case PBSJ has not brought a count of conversion (an intentional tort) against Defendant, but rather is proceeding under a theory of negligence (an unintentional tort of which, unlike a count for conversion, the right to immediate possession is not an element). As such, this case is of no import to the Court in its resolution of the Motion to Dismiss.

57. Moreover, the case of *Guardian Life Ins. Co. of America v. Weisman*, 223 F.3d 229 (3rd Cir. 2000) is completely distinguishable from the instant case.

58. Initially, the preliminary issue in this case was "whether a drawee bank must verify illegible payee indorsements received from a depository bank before the drawee bank is entitled to assert the negligent drawer defense under §3-406, as adopted by Delaware prior to July 1, 1995". *Id*. at 231 (emphasis added).

59. In the instant case, illegible payee indorsements are not at issue.

60. Moreover, the issue as framed by the court was whether a drawee bank could assert a negligent drawer defense. Here, PBSJ is not a bank attempting to assert such a claim or defense.

61.     Even worse, this case was decided under a former version of the UCC which utilized a contributory negligence framework, in contrast to the updated version based on comparative negligence. *See id.* at 231, 232, 238 ("…we must apply the former version of the [3-406] provision, as the 1990 revisions to Article 3 of the U.C.C. did not take effect in Delaware until July 1, 1995…under the changes introduced in the 1990 revision to U.C.C. §3-406, which became effective in Delaware in 1995, a comparative rather than contributory negligence scheme is used, so each party bears the loss in proportion to its contribution…we apply the pre-1990 version of the U.C.C.").

62.     As such, this case is premised on an outdated version of the U.C.C. and should have no bearing on resolution of the Motion to Dismiss.

63.     Finally, the holding of this case, that "a drawee bank does not have a duty to conduct any review of payee indorsements on checks received from a depository bank", overlooks and otherwise ignores the nature of the negligent acts committed by Defendant. *Id.* at 235.  PBSJ is not arguing that Defendant failed to review check indorsements; rather PBS&J is asserting that Defendant's negligence arises initially from the opening of the Fraudulent Account.

64.     The case of *Bank of Glen Burnie v. Loyola Federal Savings Bank*, 648 A.2d 453 (Md. Ct. App. 1994) is also distinguishable.  This case related to a double forgery (*i.e.* a check bearing both a forged drawer's signature and a forged indorsement).  The instant case involves no such facts.  Accordingly, *Bank of Glen Burnie* is unavailing to Defendant's position.

65.     As such, Defendant's citation to the above cases is unavailing and provides no cognizable support for its Motion to Dismiss.

***PBSJ PROPERLY STATES A CAUSE OF ACTION FOR UNJUST ENRICHMENT***

66.     While ultimate recovery is an issue to be determined by the Court at a later point in

16

time, and notwithstanding the fact that the Complaint does not contain a count for breach of contract, for pleading purposes causes of action for breach of contract and unjust enrichment may be pled in the alternative.  *See Donnelly*, 2007 WL 896337 at *3.

67.     Liberality in pleading different claims in the alternative is well-established under the relevant procedural rules.  *See* Fed. R. Civ. P. 8(a)("Relief in the alternative or of several different types may be demanded"); 8(e)(2)("A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses…A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds")(emphasis added).

68.      As such, for purposes of the instant Motion, it is wholly permissible for PBSJ to elect to bring a count for unjust enrichment.

69.      Defendant's excuse that it "merely received funds [under the DeLoach Personal Line of Credit] that it was legitimately owed" is a gross oversimplification.  The issue is not whether Defendant was legitimately owed these funds but rather the manner in which it received them.

70.     Here, PBSJ has alleged that the Fraudulent Account consisted of monies that were rightfully PBSJ's and that Defendant received funds in payment on the DeLoach Personal Line of Credit via the Fraudulent Account.  *See* Complaint at ¶¶ 11, 37, 38, 39, 40 and 59.

71.     Stated more directly, Defendant directly and substantially benefited from the Fraudulent Account that it negligently allowed to be opened and maintained.  *See*, *e.g.*, Complaint ¶40 ("By virtue of Wachovia's clearing of checks made payable to itself from the rogue Fraudulent Account, Wachovia directly benefited from the improper activities of DeLoach and his co-conspirators")(emphasis added).

17

72.     Indeed, **in less than one year's time Defendant received over $1,400,000.00 from the Fraudulent Account** in payments on the DeLoach Personal Line of Credit.  *See* Complaint ¶39 (detailing checks written on the Fraudulent Account from April 2004 to March 2005 that were payable to and accepted by Defendant).

73.      This, on its face, is more than sufficient to state a cause of action for unjust enrichment and to survive the instant Motion to Dismiss.

74.     Defendant's citation to *Pensacola & A.R. Co. v. Braxton*, 16 So. 317 (Fla. 1894) is puzzling.  Relating to the payment of money under a mistake of fact, the court in this case noted that such monies cannot be reclaimed "where the plaintiff has derived a substantial benefit from the payment, nor where the defendant received it in good faith in satisfaction of an equitable claim, nor where it was due in honor and conscience".  *Id.* at 321.

75.     As cited in part by Defendant, the court then states that "[t]he right to recovery in such cases turns upon the question as to whether the party receiving the money paid by mistake can, in good conscience, retain it".  *Id.* at 321.

76.     Again, the Defendant's arguments are misplaced.  The instant case does not involve money paid by mistake and as such this case is completely inapposite.  Moreover, for the purpose of deciding the instant Motion the Court must take the factual allegations of the Complaint as true, including those which allege that Defendant directly benefited from the existence of the Fraudulent Account and that it had knowledge of the benefits it was receiving thereunder.  At a minimum, whether Defendant acted in good faith during relevant times is an issue of fact that is not susceptible to resolution on a Motion to Dismiss.  Accordingly, Defendant's citation to *Braxton* is quite misguided.

77.     In light of the above, PBSJ states a cause of action for unjust enrichment.

*CONCLUSION*

78.     Beyond completely ignoring the allegations as to how it directly benefited from the Fraudulent Account when it accepted payments on the DeLoach Personal Line of Credit and without citing a single case that is remotely on-point, Defendant misanalyzes the specific nature of the negligent acts and omissions it is alleged to have committed.

79.     When construing the Complaint in the light most favorable to PBSJ, accepting the factual allegations of the Complaint as true and drawing all inferences in the light most favorable to PBSJ as the non-moving party, it is clear that PBSJ has stated a cause of action for each count of its Complaint.

80.     Indeed, PBSJ has more than met the "exceedingly low" threshold necessary for a complaint to survive a motion to dismiss for failure to state a cause of action.

81.     For all the above reasons, Defendant's Motion to Dismiss should be denied in its entirety.

**CERTIFICATE OF SERVICE**

WE CERTIFY that a copy of the foregoing was served this 6th day of August 07 via electronically with the Clerk of Court using CM/ECF.  We also certify that the foregoing document is also being served either via transmission of Notices of Electronic Filing generated by CM/ECF or via U.S. mail (and facsimile) to those listed on the attached service list.

**THE BARTHET FIRM**
Attorneys for PBSJ Corporation
200 South Biscayne Blvd., Suite 1800
Miami, Florida 33131
(305) 347-5290 phone
(305) 377-8695 fax

19

s/ Paul D. Breitner
PAUL D. BREITNER
Florida Bar No. 173126
DORON WEISS
Florida Bar No. 356920

**Case No.:** 07-21834 JORDAN/TORRES

## <u>SERVICE LIST</u>

Amy S. Rubin, Esq.
Ruden, McClosky, Smith, Schuster &
Russell
222 Lakeview Avenue
Suite 800
West Palm Beach, Florida 33401
(561) 514-3447