UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO: 07-21834 JORDAN/TORRES

THE PBSJ CORPORATION,
A Florida Corporation,

       Plaintiff,
v.

WACHOVIA BANK, NATIONAL
ASSOCIATION, a National Chartered Bank,

       Defendant.
_____/

## WACHOVIA BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendant, Wachovia Bank, N.A. ("Wachovia"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L.R. 7.1 and 7.5, requests entry of summary judgment in its favor and against Plaintiff, The PBSJ Corporation ("PBSJ" or "Plaintiff")[1], and states:

### I. Background and Preliminary Statement

1. Plaintiff has filed a two-Count Complaint for "Negligence" and "Unjust Enrichment" against Wachovia alleging that Wachovia improperly permitted Plaintiff's former corporate officer, W. Scott DeLoach ("DeLoach"), without PBSJ's knowledge, to open an invalid account in Plaintiff's name (the "Account")[2] and use the Account to embezzle PBSJ's funds.

2. Wachovia is not liable in this matter, under any legal theory, because PBSJ's board of directors expressly authorized and directed Wachovia to open and maintain the Account.

---

[1] PBSJ refers to The PBSJ Corporation and each of the entities referred to in its Assignment of Claims attached to the Complaint as Exhibit A.
[2] Plaintiff refers to the Account in its Complaint as the "Fraudulent Account."

WPB:392811:1

1

Ruden, McClosky, Smith, Schuster & Russell, P.A.

3.     PBSJ's lawsuit centers on its claim that DeLoach was able to use the Account as his personal slush fund because PBSJ had no knowledge the Account was opened.

4.     Specifically, PBSJ claims it was unaware the Account was opened because Wachovia failed to obtain a corporate resolution authorizing the opening of the Account and because DeLoach misappropriated Richard A. Wickett's ("Wickett") signature stamp and affixed Wickett's facsimile signature to the Deposit Account Application ("Signature Card") for the Account. (Complaint, ¶¶ 10, 28, 29). The indisputable facts, however, are otherwise.

5.     In its September 21, 2007 Order on Motion to Dismiss (D.E. #8), based upon PBSJ's apparent reformulation of its theory of negligence in its response to Wachovia's Motion to Dismiss (which interpretation this Court has accepted and accordingly limited PBSJ going forward), this Court expressly ruled that: "the only issue remaining in dispute with respect to Count I [negligence] is whether the complaint sufficiently alleges that PBSJ's losses were proximately caused by Wachovia's conduct in opening the [Account]". *See* Order on Motion to Dismiss (D.E. #8, p.5).

6.     Plaintiff further alleges that without authorization, DeLoach deposited checks, payable to PBSJ, which he drew on a valid account of Plaintiff at another institution (not a party to this action), into the Account and DeLoach disbursed the funds from the Account for purposes other than the payment of legitimate expenditures of Plaintiff, including payments made to Wachovia to pay for DeLoach's personal line of credit. (Complaint, ¶¶ 33, 35-41.)

7.     Based upon the undisputed issues of fact, Wachovia is entitled to summary judgment as a matter of law because: (1) PBSJ expressly authorized and directed the opening of the Account by executing and delivering to Wachovia the Certified Corporate Resolution for Depository Authorization (the "Corporate Resolution"), specifically referencing the Account; (2) in executing the Corporate Resolution, PBSJ represented to Wachovia that it took all actions necessary to validly open the Account; (3) the use of a facsimile signature for Wickett on the Signature Card is

immaterial; (4) the Deposit Agreement and Disclosures for Commercial Accounts (the "Deposit Agreement"), which governs the relationship between Wachovia and PBSJ relative to the Account, places the risk of loss on the party who creates and uses a facsimile signature stamp; (5) PBSJ failed to timely notify Wachovia of any alleged improper activity in the Account; (6) PBSJ's negligence claim is barred by the economic loss rule; (7) PBSJ's unjust enrichment claim is unavailable since it is governed by the Deposit Agreement; and (8) each and every check written on the Account contained an authorized signature and was paid at the direction of PBSJ and as permitted by Florida law and the Uniform Commercial Code ("U.C.C.").

## II. Memorandum of Law

### A.   *Standard for Summary Judgment*

Fed. R. Civ. P. 56(c) provides that "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir. 1987); *In re: Pierre*, 198 B.R. 389, 391 (S.D. Fla. 1996). Rule 56 is based upon the principle that if the Court is made aware of the absence of any genuine issues of material fact, it should, on motion, promptly adjudicate the legal questions which remain and terminate the case, thus avoiding the delay and expense associated with a trial. *U.S. v. Feinstein*, 717 F.Supp. 1552, 1555 (S.D. Fla. 1989).

"Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather, as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex Corporation v. Catrett*, 477 U.S. 317, 327 (1986). The U.S. Supreme Court has articulated the legal principle concerning the standard governing the issuance of summary judgment in *Celotex* and in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In *Celotex* and *Anderson*, the Supreme Court focused on the question of what constitutes a genuine issue of material fact within the meaning of Rule 56. The principal

effect of these decisions is the express adoption of a standard that, when the moving party demonstrates that the non-moving party has insufficient evidence of any element essential to its case, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 327; *Anderson*, 477 U.S. at 252. Essentially, the issue is whether "the evidence present[s] sufficient factual disagreement to require submission to the fact-finder or [if] the controversy is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 250.

In order to defeat a motion for summary judgment under this standard, the non-moving party must do more than simply show that there is some doubt as to the facts of the case. *Id.* at 252. Thus, the party opposing the motion for summary judgment must establish the existence of a genuine issue of material fact and may not rest upon its pleadings or mere assertions of disputed fact to defeat the motion for summary judgment. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968); *Resolution Trust Corporation by the FDIC v. Clark*, 741 F.Supp. 896, 897 (S.D. Fla. 1990); *Pierre*, 198 B.R. at 391.

**B.    PBSJ Cannot Recover on Its Negligence Claim**

**1.    *PBSJ Knew the Account was Opened Because it Directed Wachovia to Open the Account***

The crux of PBSJ's claim is that DeLoach was able to use the Account as his personal slush fund because PBSJ had no knowledge that the Account was opened. Specifically, PBSJ claims it was unaware the Account was opened because Wachovia failed to obtain a corporate resolution authorizing the opening of the Account and because DeLoach misappropriated Wickett's signature stamp and affixed Wickett's facsimile signature to the Signature Card. (Complaint, ¶¶ 10, 28, 29.) This Court has already determined that: "the only issue remaining in dispute with respect to Count I [negligence] is whether the complaint sufficiently alleges that PBSJ's losses were proximately caused by Wachovia's conduct in opening the [Account]". *See* Order on Motion to Dismiss (D.E. #8, p.5).

PBSJ's claims against Wachovia, however, must fail because its most central allegations are false. Namely, PBSJ knew the Account was opened because it directed Wachovia to open the Account and the Account was properly opened. The undisputed facts establish that PBSJ delivered to Wachovia the Corporate Resolution (the document necessary to open the Account), which specifically references, authorizes, and directs the opening and maintenance of the Account. According to the Corporate Resolution which PBSJ provided to Wachovia, PBSJ acknowledged authorizing and directing the opening of the Account at a meeting of PBSJ's board of directors on January 28, 2004, at which a quorum was present and acted throughout. The Corporate Resolution contains the original signature of Wickett, an authorized officer, who Plaintiff has not alleged was involved in any improper use of the Account. In fact, Wickett's signature appears on numerous corporate resolutions of accounts referenced in the Complaint for which there has been no claim of improper opening.[3] Since PBSJ authorized the opening of the Account through the original signature of the same PBSJ officer (Wickett) who acknowledged PBSJ's authorization to open other valid accounts at Wachovia, PBSJ's claim that Wachovia opened the Account negligently or without PBSJ's knowledge is without merit.

Simply stated, PBSJ's alleged losses suffered due to the theft by its corporate officer could not have been proximately caused by Wachovia opening the Account that PBSJ had knowledge of and expressly directed Wachovia to open and maintain. Based upon the indisputable facts, Wachovia was not negligent in opening the Account and Wachovia's conduct in opening the Account did not proximately cause PBSJ's alleged losses. Thus, as a matter of law, summary judgment is warranted in favor of Wachovia as to PBSJ's negligence count.

---

[3] The corporate resolutions for each of the accounts maintained by PBSJ, including the Account, all contain the signatures of either Wickett, or DeLoach, or both, as authorized officers of PBSJ. *See* Composite Exhibit C to Statement of Undisputed Facts filed simultaneously with the filing of the instant Motion.

WPB:392811:1

Ruden, McClosky, Smith, Schuster & Russell, P.A.

### 2.   *PBSJ Acknowledged Taking All Actions Necessary to Open the Account*

The Deposit Agreement governed each of the accounts PSBJ maintained at Wachovia at the time the Account was opened. *See* Deposit Agreement, Section I, 1, p. 2. In executing the Corporate Resolution (and Signature Card), PBSJ expressly agreed to be bound by the terms of the Deposit Agreement, which provides:

> "The business and each person who signs the signature card, any resolution or any other separate authorization concerning an account, represent to and agrees with us that, (a) the business has taken all action necessary to open and maintain the account, (b) all resolutions or other authorizations given to us by or on behalf of the business are true, accurate, and complete in all respects…and (d) each person whose name is written or printed on the signature card, any resolution or any other separate written authorization concerning the account has complete authority to bind the business in all transactions involving any account."
> *See* Deposit Agreement, Section I, 2, p. 2-3.

Accordingly, by signing the Corporate Resolution, PBSJ, DeLoach, and Wickett expressly acknowledged that: (1) PBSJ has taken all actions necessary to open and maintain the Account; (2) the Corporate resolution is true, accurate, and complete in all respects; and (3) DeLoach and Wickett had complete authority to bind PBSJ.

In light of PBSJ's express authorization to Wachovia to open the Account, and PBSJ's express representation to Wachovia that it has taken all actions necessary to open and maintain the Account, PBSJ cannot now attempt to impose some unknown duty upon Wachovia and contend that Wachovia was somehow negligent in opening the Account it directed Wachovia to open. Accordingly, based upon the undisputed facts, Wachovia was not negligent in opening the Account and Wachovia's conduct in opening the Account did not proximately cause PBSJ's alleged losses. Thus, as a matter of law, summary judgment is warranted in favor of Wachovia as to PBSJ's negligence count.

### 3.  *The Use of a Facsimile Signature for Wickett on the Signature Card is Immaterial*

PBSJ contends that DeLoach misappropriated and applied Wickett's facsimile stamp signature to the Signature Card without its authorization. (Complaint, ¶ 29.) However, even if PBSJ's contention is true, the use of a facsimile signature for Wickett on the Signature Card is immaterial since, by the clear language of the Corporate Resolution, which contains the original signatures of Wickett and DeLoach, PBSJ knew the Account was opened and knew that both DeLoach and Wickett were authorized signatories on the Account. Without any facts to support its position (as addressed in further detail below), PBSJ contends that Wachovia's policies and procedures preclude the opening of an account which contains a facsimile signature on a signature card and that Wachovia recklessly allowed the Account to be opened with Wickett's facsimile signature on the Signature Card. (Complaint, ¶ 30.) Wickett's facsimile stamp signature on the Signature Card cannot form the basis for liability against Wachovia because his original signature (along with DeLoach's original signature) on the Corporate Resolution evidences PBSJ's authorization to open the Account during the January 28, 2004 meeting of its board of directors.

Furthermore, in the Corporate Resolution, PBSJ acknowledged that: "Each of the above identified or described officers or representatives of the Corporation is herewith authorized to sign and execute such signature cards, applications, and forms as the Bank shall deem appropriate, in connection with the opening or and maintaining of such account(s)…" Moreover, the Corporate Resolution specifically provides that each of the named individuals (DeLoach and Wickett) are authorized to act on behalf of PBSJ, and "…more than one individual is solely for your convenience and internal control purposes."

Thus, pursuant to the Corporate Resolution, either DeLoach or Wickett were authorized to sign and execute such signature cards, applications, and forms as the Bank shall deem appropriate, in connection with the opening or and maintaining of the Account, and only one of their signatures

was required. Accordingly, the signature of only DeLoach on the Signature Card would have been sufficient and acceptable to Wachovia. Wachovia has no internal policies requiring more than one authorized signature on a Signature Card. To the extent PBSJ can establish, which it cannot as described below, that Wickett's signature on the Signature Card is improper, it is immaterial, since Wickett's signature is superfluous.

Accordingly, since Wickett's signature on the Signature Card is immaterial and superfluous, as a matter of law, Wachovia was not negligent in opening the Account and Wachovia's conduct in opening the Account did not proximately cause PBSJ's alleged losses. Thus, summary judgment is warranted in favor of Wachovia as to PBSJ's negligence count.

### 4. *PBSJ Bore the Risk of Any Misuse of Wickett's Signature Stamp*

The Corporate Resolution and Deposit Agreement dictate that Wachovia is to treat facsimile signatures as originals and that PBSJ bears the risk of any misuse of any signature stamp created for any signatory to its accounts. Thus, even if PBSJ can establish that DeLoach misappropriated Wickett's signature stamp and improperly affixed it to the Signature Card or any checks drawn on the Account, Wachovia cannot be liable for any such unauthorized use because PBSJ bore that risk.

The Deposit Agreement governing the relationship between PBSJ and Wachovia relative to the Account treats facsimile signatures as original signatures and places the risk of loss on a party who creates and uses a facsimile signature stamp. The Deposit Agreement specifically provides:

> "We are not liable for any use of a facsimile signature or endorsement device. If you use a facsimile signature or endorsement, you bear the risk of any unauthorized use of your facsimile method or the use of fake facsimiles that may appear to be facsimiles."

*See* Deposit Agreement, Section I, 7, p. 4.

Additionally, the Corporate Resolution, containing Wickett's original signature as an authorized officer and signor to the Account, provides that:

> "the Bank be and it is hereby authorized to honor receive, certify or pay all checks…bearing or purporting to bear the facsimile signature of any person or persons authorized to sign, when the signature resembles the facsimile signature designated regardless of who affixed the actual or purported facsimile signature thereon, or by what means the facsimile signature thereon may have been affixed hereto, if such facsimile signature resembles the facsimile specimen from time to time filed with the Bank."

Accordingly, since PBSJ bore the risk of DeLoach's alleged misappropriation and/or unauthorized use of Wickett's signature stamp, Wachovia cannot be liable for the alleged unauthorized application of Wickett's signature stamp on the Signature Card or on any checks drawn on the Account. Thus, as a matter of law, summary judgment is warranted in favor of Wachovia as to PBSJ's negligence count.

### 5. *PBSJ failed to timely notify Wachovia of any improper activity in the Account*

As a preliminary matter, PBSJ is not disputing that DeLoach was an authorized signor on its accounts or that any of the signatures or endorsements on the checks drawn on the Account were unauthorized. *See* Order on Motion to Dismiss (D.E. #8, p.5). However, to the extent PBSJ is claiming that any unauthorized activity occurred on the Account, it is statutorily and contractually precluded from maintaining such a claim under any legal theory.

At PBSJ's direction, the Account was opened on March 8, 2004. Monthly statements for the Account were mailed to PBSJ within seven (7) days of the statement ending period. The cancelled checks referenced on each monthly statement for the Account were made available to PBSJ at or before each monthly statement was mailed to PBSJ. Notwithstanding, the first time Wachovia was notified that there may have been unauthorized activity in the Account was on March 25, 2005, more than a year after the Account was opened. Based upon the plain language of the Deposit Agreement and Fla. Stat. § 674.406, PBSJ is precluded from bringing any claim against Wachovia

9

Ruden, McClosky, Smith, Schuster & Russell, P.A.

for the alleged wrongful conduct of DeLoach, under any legal theory, since PBSJ failed to timely notify Wachovia of any unauthorized activity in the Account.

Section I, 14 of the Deposit Agreement, provides, in pertinent part:

> "You are in the best position to discover a forged, unauthorized, or missing signature or endorsement, a material alteration, a missing or diverted deposit or any other error or discrepancy relating to a check, deposit, or other credit or debit entry to your account. Therefore, you agree to carefully and promptly examine your statements and cancelled checks (if you elected to receive them) when you, or a party designated by you, receive them. If you think an unauthorized person has withdrawn funds from your account, that one or more deposits are not reflected on your statements, or that there is any other type of error or discrepancy in your statements, you should notify us immediately...If you have not discovered and reported a forged, unauthorized or missing signature or endorsement, a material alteration, a missing or diverted deposit or any other error or discrepancy relating to a check, deposit or other credit or debit entry to your account within forty (40) days of the date on which the first statement containing or reflecting (or that should have contained or reflected) those items was mailed to you or otherwise made available to you, you agree not to assert that problem against us. This forty (40) day limitation takes priority over the provisions in the previous paragraph and applies regardless of whether or not you or we exercised ordinary care with respect to the item in question (or its payment), the examination of the statement on which it was reflected (or should have been reflected) or otherwise. **IF YOU FAIL TO DISCOVER AND REPORT THESE OR ANY OTHER ERRORS OR DISCREPANCIES WITHIN THE FORTY (40) DAY PERIOD, YOU LOSE ANY AND ALL RIGHTS YOU MAY HAVE TO ASSERT THE ERROR OR DISCREPANCY AGAINST US.**" (No emphasis added).[4]

---

[4] Reporting provisions included within a deposit agreement between a bank and its customer are routinely upheld. *See, e.g., Bank of America, N.A. v. Putnal Seed and Grain, Inc.*, 965 So.2d 300 (Fla. 1st DCA 2007) (The 60-day notice requirement in the Deposit Agreement creates a condition precedent which the customer must comply with before it may seek reimbursement); *Parent Teacher Ass'n, Public Sch. 72 v. Mfrs. Hanover Trust Co.*, 138 Misc.2d 289, 524 N.Y.S.2d 336, 340 (N.Y.Civ.Ct.1988) ("Conditions precedent and shortened periods of limitation ... have been routinely accepted in the banking relationship, usually without extensive analysis. Such provisions are not only compatible with statute and case law; they are in accord with public policy by limiting disputes in a society where millions of bank transactions occur every day." (internal citations omitted)); *Borowski v. Firstar Bank Milwaukee, N.A.*, 36 UCC Rep. 2d 221 (Wisc. Ct. App. 1998) (14-day reporting provision in Deposit Agreement was valid and enforceable); *Stowell v. Cloquet Co-op Credit Union*, 557 N.W.2d 567 (Minn.1997) (upholding 20-day reporting provision in Deposit Agreement); *Freese v. Regions Bank*, 644 S.E.2d 549 (Ga.Ct. App. 2007) (30-day reporting provision in Deposit Agreement was valid and enforceable and precluded customer's claim regardless of negligence of either party); *Reliance Ins. Co. v. Bank of America Nat. Trust & Savings Ass'n*, 43 UCC Rep. 2d 946 (N.D. Ill. 2001) (upholding 30-day reporting provision in Deposit Agreement).

WPB:392811:1

*See* Deposit Agreement, Section I, 14, p. 5.[5]

Similarly, Fla. Stat. § 674.406, titled, "Customer's duty to discover and report unauthorized signature or alteration," provides that in order to maintain a claim against a bank, the customer notify the bank of unauthorized activity on its account, within a maximum of thirty (30) days, of the first bank statement reflecting such unauthorized activity by the same wrongdoer. Fla. Stat. § 674.406 provides, in pertinent part:

> "If a bank sends or makes available a statement of account or items pursuant to subsection (1), the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts… If the bank proves that the customer failed, with respect to an item, to comply with the duties imposed on the customer by subsection (3), the customer is precluded from asserting against the bank…(b) The customer's unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration and after the customer had been afforded a reasonable period of time, not exceeding 30 days, in which to examine the item or statement of account and notify the bank." Fla. Stat. § 674.406 (3).

Despite receiving monthly statements for the Account and the checks being made available to PBSJ, PBSJ did not notify Wachovia that there may have been unauthorized activity in the Account or the alleged long fraudulent scheme of DeLoach until more than a year after the Account was opened. Clearly, pursuant to the express terms of the Deposit Agreement and Fla. Stat. § 674.406, PBSJ is contractually and statutorily precluded from asserting any claim against Wachovia for any allegedly unauthorized activity in the Account, by the same wrongdoer, DeLoach, because it failed to notify Wachovia of such unauthorized activity within forty (40) days of Wachovia's

---

[5] In the Deposit Agreement (effective January 1, 2004), the forty (40) day provision referred to above provides for a shorter thirty (30) day reporting provision. This change does not effect Wachovia's entitlement to summary judgment.
WPB:392811:1

mailing of the first monthly statement reflecting any such allegedly unauthorized activity by DeLoach. Accordingly, since PBSJ indisputably failed to timely notify Wachovia of any unauthorized activity in the Account, as a matter of law, summary judgment is warranted in favor of Wachovia as to PBSJ's negligence count.

### 6. *PBSJ's Negligence Claim is Barred by the Economic Loss Rule*

PBSJ's Complaint seeks damages under the common law tort theory of negligence claiming that its damages were caused by DeLoach's deposit of checks, payable to PBSJ, which he drew on a valid account of Plaintiff at another institution (which is not a party to the lawsuit) into the Account and DeLoach's disbursal of those amounts from the Account for purposes other than the payment of legitimate expenditures on behalf of Plaintiff. (Complaint, ¶¶ 33, 35-41.) PBSJ asserts this tort claim despite its relationship with Wachovia being contractually governed by the Deposit Agreement. PBSJ acknowledged its contractual relationship with Wachovia by virtue of its execution of the Signature Card and Corporate Resolution.[6]

The economic loss rule provides that a plaintiff may not sue a defendant under tort theories for purely economic losses when the basis of the parties' relationship is contractual unless there are allegations of ultimate fact to establish a personal injury, property damage or an independent tort involving circumstances outside the scope of the parties' contract. *Moransais v. Heathman*, 744 So.2d 973, 979-980 (Fla. 1999). In *Moransais*, the Court reaffirmed its holding in *Florida Power & Light Co. v. Westinghouse*, adhering "to the fundamental principles and precedents relied upon in applying the so-called economic loss rule". *Moransais*, 744 So.2d at 980. The court in *Florida Power & Light* held contract principles are more appropriate than tort principles for resolving economic loss without an accompanying physical injury or property damage, while pointing out that

---

[6] PBSJ additionally acknowledged its contractual relationship with Wachovia in executing each of the signature cards and corporate resolutions attached as Composite Exhibit C to the Statement of Undisputed Facts.

WPB:392811:1

the lack of a tort remedy does not mean that the purchaser is unable to protect himself from loss. *Florida Power & Light Co. v. Westinghouse*, 510 So.2d 899, 902 (Fla. 1987). Moreover, a purchaser of services cannot recover purely economic damages due to negligence arising from the breach of a contract where the purchaser cannot show the commission of a tort independent of the breach itself. *AMF Corp. v. Southern Bell Tel. & Tel. Co.*, 515 So.2d 180, 181 (Fla. 1987).

Here, PBSJ is a purchaser of services and its relationship with Wachovia is contractual by virtue of the Deposit Agreement. Since PBSJ does not allege and cannot present any evidence establishing the existence of personal injury, property damage or an independent tort outside of the scope of the contract, its negligence count fails to state a claim upon which relief may be granted. Accordingly, summary final judgment against PBSJ on its negligence count is warranted.

**C.     *PBSJ Cannot Recover on Its Unjust Enrichment Claim***

   **1.     *PBSJ's Contractual Relationship with Wachovia Precludes its Unjust Enrichment Claim***

Despite its contractual relationship with Wachovia, PBSJ seeks to hold Wachovia liable under an unjust enrichment theory because certain checks drawn on the Account were payable to Wachovia. It is well established in Florida law that equitable theories, such as unjust enrichment or quantum meruit, are not available where an express agreement exists, as the rights and obligations of the parties are governed by the agreement. *See e.g., Snyderburn v. Moxley*, 652 So.2d 945 (Fla. 5th DCA 1995); *Quayside Associates, Ltd. v. Triefler*, 506 So.2d 6 (Fla. 3rd DCA 1997); *Ocean Communications, Inc. v. Bubeck*, 956 So.2d 1222 (Fla. 4th DCA 2007); *Hoon v. Pate Const. Co., Inc.*, 607 So.2d 423 (Fla. 4th DCA 1992).

The relationship between PBSJ and Wachovia is indisputably governed by the express terms of the Deposit Agreement. As detailed above, the Deposit Agreement sets forth the rights and obligations of the parties with regard to checks drawn on the Account. Specifically, PBSJ

acknowledged that it was in the best position to discover unauthorized activity in the Account, and agreed to promptly review its statements and notify Wachovia of any unauthorized activity. The Deposit Agreement expressly sets forth the circumstances upon which PBSJ may bring claims against Wachovia based upon alleged unauthorized activity in the Account. *See* Deposit Agreement, Section I, 14, p. 5. Specifically, PBSJ's timely (within forty (40) days of the mailing of the monthly statements for the Account) notification to Wachovia of any discrepancies or unauthorized activity in the Account is a contractual prerequisite to PBSJ's maintenance of any claim against Wachovia. Since the precise issue as to the circumstances under which PBSJ's ability to bring a claim against Wachovia relative to checks drawn on the Account is governed by and addressed in the Deposit Agreement, PBSJ's unjust enrichment claim is unavailable, and any claim by PBSJ in this regard must be brought under the Deposit Agreement. Accordingly, as a matter of law, Wachovia is entitled to summary judgment on PBSJ's unjust enrichment claim.

    **2.    *Florida Law, the U.C.C., and PBSJ directed Wachovia to Pay All Checks on the Account***

PBSJ has brought this action against Wachovia claiming that it has been damaged by DeLoach's issuance of checks from the Account for his own personal purposes. (Complaint, ¶¶ 33, and 35-41.) However, PBSJ cannot recover from Wachovia for any checks paid on the Account, regardless of the purpose, because Florida law, the U.C.C. and PBSJ directed those checks be paid.

Section 3-402 of the Uniform Commercial Code, as codified by Fla. Stat. § 673.4021(1), provides:

> "If a person acting, or purporting to act, as a representative signs an instrument by signing either the name of the represented person or the name of the signer, the represented person is bound by the signature to the same extent the represented person would be bound if the signature were on a simple contract. If the represented person is bound, the signature of the representative is the "authorized signature of the represented person" and the represented person is liable on the instrument, whether or not identified in the instrument."

Since DeLoach and Wickett are authorized signors on the Account, PBSJ is bound by their signatures on each of the checks drawn on the Account, regardless of whether such signatures were original or facsimile signatures. Indeed, PBSJ acknowledges that the Wickett's signature stamp was created so that Wickett would not have to individually sign each check written on the accounts to which he was a signatory (Complaint, ¶¶17, 18). Moreover, in the Corporate Resolution, Wickett expressly authorized Wachovia to honor checks drawn on the Account bearing his facsimile signature. Thus, since DeLoach and Wickett were authorized signors on the Account, Wachovia properly paid each of the checks drawn on the Account which bore the signatures (facsimile or original) of either DeLoach or Wickett.

In fact, the drafters of the U.C.C., in their comment to Section 3-405, which is codified verbatim in Fla. Stat. § 673.4051, considered the precise set of factual circumstances alleged herein where an authorized representative of an entity wrongfully issued checks for his own benefit. The Drafters concluded that: "Although the writing of the check was not authorized, Corporation is bound as drawer of the check because X had authority to sign checks on behalf of Corporation. This result follows from agency law and Section 3-402(a). Section 3-405 does not apply in this case because there is no forged endorsement." See, U.C.C. 3-405, Official Comments, Case Number 2.

Furthermore, in the Corporate Resolution, PBSJ specifically directed Wachovia to honor, without inquiry, all checks drawn on the Account which were signed by Wickett or DeLoach, regardless of whether they were made payable to any individual or for the personal obligations of DeLoach. The Corporate Resolution provides that:

> "the Bank is hereby authorized to honor, receive, certify or pay all of their instruments or evidences of indebtedness, checks, drafts, and other items enumerated or described in the foregoing Resolutions, even though drawn or endorsed to bearer or to the order of any individual, or any officer, representative, or employee of this Corporation, signing his name or tendered by him for cash, or for payment of the individual obligation(s)

of such officer, representative, or employee, or for deposit to his personal account; and said Bank shall not be expected, required, or under any obligation to inquire as to the circumstances of the issuance or use of any document or item signed or endorsed in accordance with the foregoing Resolutions, or the application or disposition of such document(s) or items or the proceeds thereof."

By executing the Corporate Resolution, PBSJ expressly authorized Wachovia to pay each of the checks drawn on the Account containing the signature of either Wickett or DeLoach, without any requirement or expectation of inquiry as to the circumstances of the issuance of said checks. PBSJ cannot now claim that Wachovia improperly paid any such checks drawn on the Account.

Since PBSJ is bound by the signatures on each of the checks drawn on the Account and since Florida law, the U.C.C., and PBSJ dictate that those checks were properly paid by Wachovia, as a matter of law, Wachovia is entitled to summary judgment against PBSJ on its unjust enrichment count.

### III.   Conclusion

As demonstrated above, there are no issues of material fact. As a matter of law, both PBSJ's negligence and unjust enrichment claims must fail because: (1) PBSJ expressly authorized and directed the opening of the Account; (2) PBSJ represented to Wachovia that it took all actions necessary to validly open the Account; (3) the use of a facsimile signature of Wickett on the Signature Card, even if not authorized by PBSJ (which Wachovia strenuously denies), is immaterial; (4) the Deposit Agreement governing the dispute herein places the risk of loss on the party who creates and uses the facsimile signature stamp; (5) PBSJ failed to timely notify Wachovia of any alleged improper activity in the Account pursuant to the Deposit Agreement and Fla. Stat. §674.406; (6) PBSJ's negligence claim is barred by the economic loss rule; (7) PBSJ's unjust enrichment claim is unavailable since it is governed by the Deposit Agreement; and (8) each check

written on the Account was properly paid as required by Florida law, the U.C.C., and at PBSJ's direction. Accordingly, Wachovia is entitled to entry of summary judgment against the PBSJ.

WHEREFORE, Defendant, Wachovia Bank, N.A., respectfully requests that this Court enter Summary Judgment in its favor and against Plaintiff, The PBSJ Corporation, in all respects, award Wachovia its attorneys' fees and costs pursuant to the Deposit Agreement, and grant such other and further relief as is just and proper.

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of July, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Dated: July 2, 2008
West Palm Beach, Florida

        Respectfully submitted,

        s/ Elliot A. Hallak
        Amy S. Rubin (Florida Bar Number: 476048)
        amy.rubin@ruden.com
        Elliot A. Hallak (Florida Bar Number: 762741)
        elliot.hallak@ruden.com
        RUDEN, MCCLOSKY, SMITH, SCHUSTER & RUSSELL, P.A.
        222 Lakeview Avenue, Suite 800
        West Palm Beach, FL 33401
        Telephone: (561) 838-4500
        Facsimile: (561) 514-3447

        *Attorneys for Defendant, Wachovia Bank, N.A.*

## SERVICE LIST
*The PBSJ Corporation v. Wachovia Bank, National Association*
Case No. 07-21834 JORDAN/TORRES
United States District Court, Southern District of Florida

**Electronically by CM/ECF System**
Amy S. Rubin (Florida Bar Number: 476048)
Victor R. Berwin (Florida Bar Number: 0823821)
Elliot A. Hallak (Florida Bar Number: 762741)
RUDEN, MCCLOSKY, SMITH, SCHUSTER & RUSSELL, P.A.
222 Lakeview Avenue, Suite 800
West Palm Beach, FL 33401
Telephone: (561) 838-4500
Facsimile: (561) 514-3447
*victor.berwin@ruden.com*
*amy.rubin@ruden.com*
*elliot.hallak@ruden.com*


Patrick C. Barthet (Florida Bar Number: 294012)
Paul D. Breitner (Florida Bar Number: 179140)
Doron Weiss (Florida Bar Number: 356920)
The Barthet Firm
200 South Biscayne Boulevard, Suite 1800
Miami, FL 33131
Telephone: (305) 347-5290
Facsimile: (305) 377-8695
*pbarthet@barthet.com*
*pbreitner@barthet.com*
*dweiss@barthet.com*