UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 07-21834-CIV-JORDAN

| | |
|---|---|
| THE PBSJ CORPORATION, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| WACHOVIA BANK, N.A., | ) ) |
| Defendant. | ) ) |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

PBSJ filed this lawsuit after company funds were embezzled by employees through a Wachovia bank account. PBSJ seeks recovery from Wachovia based on theories of negligence and unjust enrichment. For the reasons stated below, Wachovia's motion for summary judgment [D.E. 96] is GRANTED.

**I. STANDARD**

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. *See id.* at 323.  That is, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  In making this assessment, the court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," and "resolve all reasonable doubts about the facts in favor of the nonmovant." *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997).

**II. FACTS**

PBSJ and Wachovia Bank enjoyed a long-standing business relationship. Beginning as early

as 1999, PBSJ maintained at least half a dozen corporate bank accounts with Wachovia. *See* Statement of Undisputed Facts, at ¶¶ 1, 23 [D.E. 97]. These accounts were governed by a deposit agreement, which provided that:

> The business and each person who signs the signature card, any resolution or any other separate written authorization concerning an account, represents to and agrees with us that, (a) the business has taken all actions necessary to open and maintain the account, (b) all resolutions or other authorizations given to us by or on behalf of the business are true, accurate and complete in all respects, . . . and (d) each person whose name is written or printed on the signature card, any resolution or any other separate written authorization concerning the account has complete authority to bind the business in all transactions involving any account.

*See* Deposit Agreement, at 2–3 [D.E. 97, ex. B]. For every account that it opened with Wachovia, PBSJ executed both a signature card and a corporate resolution authorizing various corporate officers to bind the company with respect to each account. For each of the relevant accounts, either W. Scott DeLoach or Richard A. Wickett, or both, were authorized to act of behalf of PBSJ. *See* Statement of Undisputed Facts, at ¶ 26.

On March 8, 2004, PBSJ opened a new corporate account with Wachovia ("the Account"). In opening the Account, Wachovia overlooked a number of procedures generally practiced by the bank when opening a non-personal account for an existing corporate customer. For instance, the bank failed to determine what the client's needs were with respect to the Account, the date of PBSJ's inception, the source of the funds used to open the Account, whether PBSJ was involved in money laundering (it wasn't), whether it wished to issue ATM cards, and whether it would "be writing checks that will be cashed at the teller line." *See* PBSJ's Response to Wachovia's Motion for Summary Judgment, at ¶¶ 51–61.

Wachovia did obtain two documents from PBSJ, either of which would have been sufficient to open the Account under the deposit agreement. First, PBSJ submitted a Certified Corporate Resolution for Depository Authorization ("resolution") that was acknowledged by PBSJ's board of directors on January 28, 2004. The resolution authorized both W. Scott DeLoach and Richard A. Wickett to sign checks and endorse deposits for the Account. *See id.*, at ¶¶ 1–8. In addition to the

resolution, PBSJ submitted a signature card, which contained the original signature of Mr. DeLoach and a facsimile signature of Mr. Wickett.

Although Mr. Wickett was not involved in any wrongdoing with respect to the Account, Mr. DeLoach used it as a personal slush fund to loot PBSJ out of "millions of dollars." *See id.*, at ¶¶ 2, 9; Complaint, at ¶ 10 [D.E. 1]. On March 25, 2005, PBSJ notified Wachovia that the Account had been opened without its authorization. *See* Statement of Undisputed Facts, at ¶ 22. PBSJ brought this lawsuit in 2007, attempting to recover from Wachovia the funds embezzled by Mr. DeLoach. Wachovia now moves for summary judgment on both the negligence count (Count I) and the unjust enrichment count (Count II).

### III. ANALYSIS
#### A. COUNT I

PBSJ's negligence claim is premised on its allegation that Wachovia failed to exercise ordinary care in opening and monitoring the Account, which allowed Mr. DeLoach to loot the company. When these two issues–the *opening* of the Account and its subsequent *monitoring*–are bifurcated, it is clear that Wachovia is entitled to summary judgment on its negligence claim. First, any negligence by the bank in opening the account did not proximately cause the subsequent embezzlement as a matter of law, and even if it did, any claims by PBSJ relating to this alleged negligence are time barred under Florida law. Second, PBSJ has offered no evidence whatsoever in support of its allegation that Wachovia failed to exercise ordinary care in monitoring the account after it was opened.

##### 1. OPENING THE ACCOUNT

In its attempt to defeat summary judgment, PBSJ offers substantial evidence detailing Wachovia's failure to follow established protocol when it opened the Account and argues that there is an issue of fact as to whether this failure proximately caused the embezzlement. I disagree.

The crux of PBSJ's argument opposing Wachovia's summary judgment motion rests on the bank's acceptance of Mr. Wickett's facsimile signature on the signature card opening the Account. I find as a matter of law, however, that this conduct did not proximately cause PBSJ's damages. Proximate cause consists of two elements under Florida law: causation in fact and foreseeability. "To determine whether cause in fact exists, Florida courts generally follow the 'but-for' test: whether

there is such a 'natural, direct, and continuous sequence between the negligence act [or omission] and the [plaintiff's] injury that it can be reasonably said that *but for* the [negligent] act [or omission] the injury would not have occurred.'" *IBP, Inc. v. Hady Enters., Inc.*, 267 F. Supp. 2d 1148 (N.D. Fla. 2002) (quoting *Stahl v. Metro. Dade County,* 438 So. 2d 14, 17–18 (Fla. 3d DCA 1983) (alterations and emphasis in original)).

Wachovia's acceptance of Mr. Wickett's facsimile signature on the signature card must be looked at in the context of the banking relationship between the two companies. Prior to the opening of the account, PBSJ had opened five corporate bank accounts with Wachovia. The documents opening each of these accounts authorized either Mr. Wickett or Mr. DeLoach, or both, to act on behalf of the corporation. With respect to the Account, PBSJ submitted two separate documents–the signature card and the resolution–either one of which would have been sufficient to open the Account and authorize the named corporate officers to bind the company. Although the signature card contained a facsimile signature for Mr. Wickett, his original signature was on the resolution.[1] Thus, pursuant to the deposit agreement governing the parties' banking relationship, Wachovia was *compelled* to open the Account upon the submission of the resolution alone. Accordingly, it cannot be said that, but for the bank's acceptance of the facsimile signature on the redundant signature card, the account would not have been opened.

Further, because I find as a matter of law that Wachovia was contractually compelled to authorize Mr. DeLoach to bind PBSJ with respect to the Account based on the resolution, I reject the remainder of PBSJ's arguments opposing summary judgment. For instance, even if Wachovia had inquired about the desirability of ATM cards, or the date of PBSJ's inception, or whether its client was involved in money laundering, it would not have stopped Mr. DeLoach from writing checks from the Account which the bank was contractually obligated to honor. The bank's failure to gather certain trivial pieces of information from Mr. DeLoach did not further in his ability to embezzle funds. Accordingly, I find that there is no question of fact that would support PBSJ's claim for negligence.

I also agree with Wachovia's argument that PBSJ's negligence claim is barred under Florida

---

[1] During oral argument, PBSJ conceded that it had no knowledge of the resolution at the time it brought the lawsuit, and that its negligence claim did not account for this document.

law. In relevant part, Fla. Stat. § 674.406, titled "Customer's duty to discover and report unauthorized signature or alteration", provides as follows:

> (1) A bank that sends or makes available to a customer a statement of account showing payment of items for the account shall either return or make available to the customer the items paid or provide information in the statement of account sufficient to allow the customer reasonably to identify the items paid. The statement of account provides sufficient information if the item is described by item number, amount, and date of payment. . . .
>
> (3) If a bank sends or makes available a statement of account or items pursuant to subsection (1), the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts. . . .
>
> (6) Without regard to care or lack of care of either the customer or the bank, a customer who does not within 180 days after the statement or items are made available to the customer (subsection (1)) discover and report the customer's unauthorized signature . . . is precluded from asserting against the bank the unauthorized signature or alteration.

*See* Fla. Stat. § 674.406.

PBSJ has made no attempt in its response opposing Wachovia's motion for summary judgment to rebut the applicability of § 674.406. During oral argument, PBSJ suggested that the statute does not apply to common-law negligence claims. That contention is clearly refuted by the plain language of § 674.406(6)–which applies "[w]ithout regard to lack of care"–as well as Florida case law applying the statute. *See Lowenstein v. Barnett Bank of S. Fla.*, 720 So. 2d 596, 596 (Fla. 3d DCA 1998) ("[T]he customer had an obligation to examine bank statements and notify the bank within [the statutory period] of any claimed errors. The customer's failure to timely discover and report the forgeries, bars his claim as a matter of law."); *Cheese & Grill Restaurant, Inc., v. Wachovia Bank*, 970 So. 2d 372, 375 (Fla. 3d DCA 2007) ("The WAMU-Restaurant account

disclosures and regulations obligated the Restaurant to monitor its own statements . . . .The Restaurant's losses are a cautionary tale underscoring the need for what accountants refer to as 'internal controls'-typically requiring, at a minimum, the segregation of the check issuance and account reconciliation functions within a business."); *Burdine-Coakley v. Capital Bank*, 542 So. 2d 1019, 1019–1020 (Fla. 3d DCA 1989) (applying § 674.406 as a bar to a negligence claim where the bank customer failed to comply with his statutory duty to monitor). Accordingly, I find that § 674.406 governs PBSJ's negligence claim.

Thus, under controlling Florida law, even accepting PBSJ's argument that Wachovia failed to exercise ordinary care in the opening of the Account, all claims relating to this breach of duty were precluded as a matter of law when PBSJ failed to notify the bank of the unauthorized activity by Mr. DeLoach within 180 days after the receipt of the first statement for the Account. In this case, PBSJ received from Wachovia its first statement for the Account by no later than mid-April 2004, and neglected to notify the bank of any unauthorized activity until March 25, 2005. *See* Affidavit of Benita Sheffield, at ¶¶ 11–13 [D.E. 98]. Any claim by PBSJ premised on Wachovia's alleged lack of care in opening the Account is therefore barred as a matter of law.

## 2. MONITORING THE ACCOUNT

I also find that Wachovia is entitled to summary judgment on all claims premised on the allegations that the bank failed to exercise reasonable care in monitoring the account.[2] "In order to state a cause of action for negligence, a plaintiff must establish that the defendant owed the plaintiff a duty, the defendant breached that duty, the breach was the proximate cause of the plaintiff's injuries, and the plaintiff suffered damages as a result of those injuries." *Vincent v. C.R. Bard, Inc.*, 944 So. 2d 1083, 1085 (Fla. 2d DCA 2006). I find that PBSJ has offered "literally no evidence" in support of its conclusory allegation that Wachovia breached its duty to PBSJ by failing to exercise ordinary care in monitoring the Account, therefore warranting the entry of summary judgment in Wachovia's favor. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 332 (1986) (White, J., concurring).

---

[2]As an initial matter, § 674.406(6) does not stand as a bar to those claims arising from unauthorized checks cashed fewer than 180 days before the bank received notice from PBSJ of unauthorized activity. The statute therefore bars only those claims relating to checks payed before September 25, 2004, thus precluding PBSJ from asserting claims for six of the 20 allegedy unauthorized checks.

The entire thrust of PBSJ's attempt to defeat summary judgment focuses on Wachovia's deficiencies in opening the Account. *See* Affidavit of Gene Cooney ("Based on my review of the documents produced by Defendants in this case, the transcripts of Defendant's agents and employees' depositions, and based on my experience and knowledge . . . , Defendant's *opening* of [the Account] on or about March 8, 2004 did not comply with and otherwise was violative of reasonable commercial banking standards.") (emphasis added). A thorough review of the record demonstrates that there is no evidence in this case that Wachovia failed to exercise ordinary care in monitoring the account, or more specifically, in paying the checks signed by a corporate officer of PBSJ who had been expressly authorized on two separate documents to bind the company with respect to the Account.[3] To the contrary, the contract governing the relationship between the parties compelled Wachovia to honor the checks signed by Mr. DeLoach.

Given the nonexistence of evidence in support of PBSJ's allegations, I find that Wachovia is entitled to judgment as a matter of law on all claims relating to its negligent monitoring of the Account.

## B. COUNT II

Wachovia is also entitled to summary judgment on the unjust enrichment count of the complaint. The resolution opening the Account created an express written contract between the parties governing all rights and obligations pursuant to that agreement. Given this contractual relationship, Florida law clearly bars the assertion of equitable theories of recovery such as unjust enrichment. *See Ocean Commc'ns, Inc. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. 4th DCA 2007) ("[A] plaintiff cannot pursue an equitable theory, such as unjust enrichment or quantum meruit, to prove entitlement to relief if an express contract exists."); *Mobil Oil Corp. v. Dade County Esoil Mgmt. Co.,* 982 F. Supp. 873, 880 (S.D. Fla. 1997) (holding that an unjust enrichment claim fails as a matter

---

[3] To the extent the record speaks at all to Wachovia's conduct in servicing the Account, it indicates that the bank acted with unusual diligence. For instance, shortly after the Account was opened, Mr. DeLoach wrote a check drawn from the Account in the amount of $250,000, which PBSJ now claims was unauthorized. Yet before paying this check, a bank employee confirmed with Sybil Thomas–the assistant treasurer at PBSJ, who was not involved in Mr. DeLoach's scheme–that the check was authorized by the company and even faxed to PBSJ a copy of the check. *See* Deposition of Linda Pena, at 127–129 [D.E. 115].

of law when an express contract between the parties is proven). Accordingly, Wachovia is entitled to summary judgment on Count II as well.

### IV. CONCLUSION

For the reasons stated above, no question of fact exists as to either count in this case. Accordingly, Wachovia's motion for summary judgment is GRANTED.

DONE and ORDERED in chambers in Miami, Florida, this 17th day of December, 2008.

_____
Adalberto Jordán
United States District Judge

Copy to:     All counsel of record